UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

STATE OF NEW YORK, and BASIL SEGGOS,
as ACTING COMMISSIONER OF
ENVIRONMENTAL CONSERVATION,

                                    Plaintiffs,

                -against-

COOPER CROUSE-HINDS, LLC, and EATON
CORPORATION, as successors to Crouse-Hinds
Company, GENERAL ELECTRIC COMPANY,
TRANSPORTATION CONSULTANTS, INC., as
successor to A & T Haulers, Inc., and PLAZA
EAST, LLC, a/k/a EAST PLAZA, INC.,

                                    Defendants.

**COMPLAINT**
**Civil Action No.**

5:16-cv-052 (TJM/TWD)

     1.     Plaintiffs State of New York, and Basil Seggos, as Acting Commissioner of the

New York State Department of Environmental Conservation ("DEC") and Trustee of Natural

Resources (collectively, the "State") by and through their attorney, Eric T. Schneiderman,

Attorney General of the State of New York, for their complaint, allege as follows:

### PRELIMINARY STATEMENT

     2.     This action is brought pursuant to the Comprehensive Environmental Response,

Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 *et seq.*, as amended by the

Superfund Amendments and Reauthorization Act of 1986, Pub. L. 99-499, and the common law

to recover response costs that have been and will be incurred by the State arising from the release

and threatened release of hazardous substances at and from the Town of Salina Landfill located

in the Town of Salina, Onondaga County, New York, and damages to natural resources, and to

redress harm to the public health and the environment of the State of New York.

1

3.      This action seeks (a) recovery of past costs incurred by the State in response to the release and threatened release of hazardous substances into the environment at and from the Salina landfill, and (b) a declaration of defendants' liability for future response costs, natural resource damages, enforcement costs and interest, and costs and expenses that the State has incurred and may incur for work related to the landfill site including, but not limited to, direct labor, fringe benefits, indirect costs, travel, analytical costs, and contractor costs.

## JURISDICTION AND VENUE

4.      This Court has exclusive jurisdiction over the First Claim for Relief, which arises under the laws of the United States, pursuant to 28 U.S.C. §§ 1331 and 2201 and 42 U.S.C. §§ 9607 and 9613.  The Court has supplemental jurisdiction, under 28 U.S.C. § 1367, for the Second Claim for Relief, which is based upon New York statutes and common law and arises out of a common nucleus of operative facts shared with first claim.  The Court also has jurisdiction to enter a declaratory judgment under 28 U.S.C. §§ 2201 and 2202, as well as 42 U.S.C. § 9613.

5.      Venue is proper in this district under CERCLA Section 113(b), 42 U.S.C. § 9613(b) and 28 U.S.C. § 1391(b), because the claims arose, and the actual releases of hazardous substances occurred, in this district.

## PARTIES

6.      Plaintiff, the State of New York, is a body politic and sovereign entity, and brings this action on behalf of itself and as *parens patriae*, trustee, guardian, and representative on behalf of all residents of the State, and particularly those individuals who live in the vicinity of the Salina Landfill.

7.      Plaintiff Seggos, pursuant to CERCLA, 42 U.S.C. § 9607(f)(2)(B) and applicable

2

New York statutory and common law, as Acting Commissioner of the DEC and Trustee of Natural Resources, brings this action to recover damages for injury to, or loss of the State's natural resources.

8.     Upon information and belief, defendant Plaza East, LLC, a/k/a, East Plaza, Inc., is a limited liability corporation organized under the laws of New York, and is authorized to do business in this State. East Plaza, Inc. owned the Salina Landfill at the time the Town of Salina operated the Landfill.

9.     Defendant Cooper Crouse-Hinds, LLC ("Cooper") is a corporation organized under the laws of the state of Delaware with its principal offices at 600 Travis, Suite 5000, Houston, Texas. At all relevant times, its predecessor in interest, Crouse-Hinds Company ("Crouse-Hinds") operated a manufacturing facility located at Wolf & Seventh North Streets in Syracuse, New York.

10.    Defendant Eaton Corporation ("Eaton") is a corporation organized under the laws of the state of Ohio with its principal offices at 1000 Eaton Boulevard, Cleveland, Ohio. At all relevant times, its predecessor in interest, Crouse-Hinds operated a manufacturing facility located at Wolf & Seventh North Streets in Syracuse, New York.

11.    Defendant General Electric Company ("General Electric" or "GE") is a company organized under the laws of the state of New York with its principal offices at 3135 Easton Turnpike, Fairfield, Connecticut. At all relevant times, General Electric operated a manufacturing facility at Electronics Park, Syracuse, New York.

12.    Defendant Transportation Consultants, Inc. is a company organized under the laws of the state of New York with its principal offices located at 174 York Street, Auburn, New

York. At all relevant times, its predecessor in interest, A & T Haulers operated a commercial refuse hauling company in Syracuse, New York.

## STATUTORY AND REGULATORY BACKGROUND

13.    Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides that, when there is a release or threatened release of hazardous substances from a facility into the environment, certain categories of persons are liable to the State for (1) the costs that the State incurs to respond to the release or threatened release, including the costs of removal actions and remedial actions, so long as the costs are "not inconsistent with the national contingency plan" and (2) "damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release."

14.    Section 107(a) of CERCLA sets out four classes of potentially responsible parties: (1) current owners and operators of a facility; (2) any party that owned or operated a facility at the time that hazardous substances were disposed of at that facility; (3) any party that arranged for the disposal, treatment, or transport for disposal or treatment of hazardous substances at the facility; and (4) any party that accepted hazardous substances for transport to the facility.  42 U.S.C. § 9607(a).

15.    "Environment," "facility," "hazardous substance," "release," "removal," "remedial action," and "respond," are defined in Sections 101(8), (9), (14), (22)-(25) of CERCLA, 42 U.S.C. §§ 9601(8), (9), (14), (22)-(25).

16.    New York's Environmental Conservation Law ("ECL") requires DEC to maintain a Registry of Inactive Hazardous Waste Disposal Sites ("the Registry") in New York State.

## BACKGROUND AND FACTUAL ALLEGATIONS

**A.    The Landfill**

17.    The Salina Landfill comprises approximately 55 acres of land located between the New York State Thruway and Ley Creek, about 1.8 miles northeast of Onondaga Lake on Wolf Street in the Town of Salina, County of Onondaga, State of New York.

18.    From 1962 to 1974, the Town of Salina operated the Salina Landfill, which it leased from East Plaza, Inc.

19.    In approximately 1962, the Town of Salina began to accept municipal refuse and other wastes at the Salina Landfill.

20.    The Salina Landfill was open from approximately 1962 to 1974 during which time it accepted a variety of wastes and refuse, including wastes generated by General Electric and Crouse-Hinds, as well as non-parties, including General Motors Corp. ("General Motors").

21.    Between 1972 and 1974, A & T Haulers, the predecessor to defendant Transportation Consultants, transported waste containing hazardous substances to the Salina Landfill for General Electric, General Motors, and Crouse-Hinds.

22.    Between 1972 and 1974, A & T Haulers picked up 42 cubic yard roll-off containers from General Electric's plant located at Electronics Park, Syracuse, New York containing trash and volumes of liquid wastes, which had a strong chemical odor. A & T Haulers disposed of the contents of the roll-off containers in the Salina Landfill.

23.    Between 1972 and 1974, A & T Haulers picked up foundry sand and other wastes from Crouse-Hinds and disposed of the foundry sand and other plant wastes, including paint and other liquid waste, at the Salina Landfill.  Upon information and belief, the foundry sand and

other plant wastes disposed of at the Salina Landfill contained hazardous substances including phenols and heavy metals.

24.   Between 1972 and 1974, A & T Haulers picked up a variety of wastes from the Fisher Guide plant, a Division of General Motors, located at 1000 Townline Road, Syracuse, New York, on a daily basis and disposed of these wastes at the Salina Landfill. Among the wastes that A & T transported to the Salina Landfill were liquids, oils, and chemical liquids. In various documents, GM advised DEC that the wastes disposed of at the Salina Landfill contained, *inter alia,* PCBs, a hazardous substance, in liquid form and fly ash, which contains hazardous substances.

25.   Upon information and belief, between 1972 and 1974, GE generated wastes containing the following hazardous substances at its Syracuse Plant at Electronics Park: PCBs, 1,2 Dichloroethene, trichloroethene, vinyl chloride, benzene, toluene, ethyl benzene, and xylene.

26.   Upon information and belief, wastes containing hazardous substances that were generated at GE's Syracuse Plant were disposed of at the Salina Landfill.  Between 1972 and 1974, General Electric contracted with A & T Haulers to transport wastes from its plant located at Electronics Park, Syracuse, New York to the Salina Landfill.  A & T Haulers picked up 42 cubic yard roll-off containers on a daily basis from inside various buildings on the plant site.  On numerous occasions, the roll-offs held volumes of liquid waste with strong chemical odors.  On occasion, the liquid would make the drivers dizzy and nauseous.  On different occasions, an employee of A & T Haulers observed small drums in the roll-offs.

27.   Between 1972 and 1974, Crouse-Hinds disposed of foundry sand at the Salina Landfill.  A & T Haulers was one of the transporters of the foundry sand that was brought to the

6

Salina Landfill. Additionally, A & T Haulers disposed of other industrial wastes at the Salina Landfill which included, unidentified liquids waste, and paint. Crouse-Hinds used phenolic-based resins in their ferrous foundry coreroom and in the ferrous and non-ferrous molding processes. The waste foundry sand from these process contained phenols and other semi-volatile organic compounds ("SVOCs") such as naphthalene, and volatile organic compounds ("VOCs") such as xylenes and toluene and other contaminants, including heavy metals. Heavy metals in the foundry sand likely included: arsenic, barium, cadmium, chromium, iron, lead, mercury, and selenium. SVOCs such as naphthalene and phenols, VOCs such as xylene and toluene and many of the heavy metals in waste foundry sand are hazardous substances within the meaning of CERCLA Section 101(14), 42 U.S.C. § 9601(14).

28.     In or about 1974, the Town stopped accepting wastes at the Salina Landfill and at the direction of DEC covered the Salina Landfill with dirt fill and graded it.

**B.      Hazardous Waste Site Listings**

29.     Upon information and belief, between 1981 and 1996, DEC directed a number of soil, groundwater and surface water sampling investigations at the Salina Landfill. These investigations revealed that hazardous substances had been released into the soil, groundwater and surface water at the Salina Landfill. These hazardous substances included PCBs, pesticides, VOCs, SVOCs, and heavy metals.

30.     Upon information and belief, in 1994, the United States Environmental Protection Agency ("EPA") designated Onondaga Lake, and its tributaries as a National Priorities List ("NPL") site pursuant to CERCLA.

31.     EPA listed certain upland areas, including the Salina Landfill, "subsites" at the

time of the Onondaga Lake NPL listing.  On December 16, 1994, the EPA listed the Salina Landfill on the NPL.

32.     In 1996, DEC further listed the Salina Landfill as a Class 2 Inactive Hazardous Waste Site pursuant to 6 NYCRR Part 375.

33.     Upon information and belief, in 1997, DEC and EPA jointly notified the Town that the Salina Landfill was a subsite of the Onondaga Lake NPL site due to the releases of hazardous substances, pollutants, and contaminants into the environment.

**C.     The State and Town Response**

34.     On or about October 29, 1997, the Town of Salina entered into an Order on Consent with DEC to perform a remedial investigation/feasibility study ("RI/FS"), remedial design and remedial action for the Salina Landfill.

35.     On or about November 17, 1997, the Town entered into a State Assistance Contract ("SAC") with DEC pursuant to the 1986 Environmental Quality Bond Act of New York State.  The SAC provides that DEC would reimburse the Town for 75% of the eligible costs associated with implementation of the RI/FS, which was later amended to include remedial design costs.  On or about December 23, 2010, the Town entered into a Superfund Municipal assistance grant with DEC, which provided that DEC would reimburse the Town for 75% of the eligible costs associated with the implementation of the remedial action for the Salina Landfill. The Town would pay 100% of the operations and maintenance costs associated with the remedial action.

36.     Following a remedial investigation of the Salina Landfill in 1998 and 1999, the submission of a remedial investigation report in 2000, the conclusion of a feasibility study in

8

2002, and approvals by both EPA and DEC, DEC and EPA issued a Record of Decision in March 2007.

### D.    Record of Decision

37.    The Record of Decision outlined the required remedial investigation and remedial actions to be implemented at the Salina Landfill.  The remediation had an estimated capital cost of $18,436,000 and an estimated annual operation and maintenance cost of $408,700.

38.    On September 30, 2010, DEC issued an Amended Record of Decision revising the nature of the remedial action required for the Salina Landfill.  The revised remedy called for the consolidation of waste materials in the landfill area north of Ley Creek, excavation of contaminated sediments, construction of impermeable caps, ground water treatment, and long-term monitoring.

39.    Under a DEC Order, the Town began remedial action work on January 19, 2010.

40.    On or about April 30, 2015, remedial action work was completed at the Salina Landfill.

41.    To date, the State of New York has expended approximately $25.8 million  to address the release and threatened release of hazardous substances at and from the Salina Landfill.  These costs consist of both payments under the SAC, the Superfund Municipal Assistance Grants, and costs incurred in oversight and interim remedial actions to address releases of hazardous substances at the Salina Landfill.

42.    DEC anticipates incurring further costs in the future under the Superfund Municipal Assistance Grant.

E.      **Hazardous Substances Found at the Salina Landfill**

43.      Hazardous substances were found at and around the Salina Landfill in environmental media including soil, sediments, groundwater and surface water.  The hazardous substances found included, *inter alia*, PCBs, numerous semi-volatile and volatile organic compounds including naphthalene, toluene, xylene and phenols.  Many SVOCs, VOCs and metals were found at concentrations exceeding New York State health-based standards.

## First Claim for Relief—CERCLA § 107(a)(1) Cost Recovery

44.      Plaintiffs repeat and reallege paragraphs 1 through 43 as if fully set forth herein.

45.      The Salina Landfill is a "facility" as that term is defined in Section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

46.      PCBs, heavy metals and semi-volatile organics, as described in paragraph 43, above, are "hazardous substances" as defined by CERCLA Section 101(14), 42 U.S.C. § 9601(14).

47.      There have been "releases" or "threatened releases," as that term is defined in Section 101(22) of CERCLA, 42 U.S.C. § 9601(22), of "hazardous substances," as that term is defined in Section 101(14), 42 U.S.C. § 9601(14), at and from the Salina Landfill, including, but not limited to, the hazardous substances identified in Paragraph 43.

48.      By reason of the State's payments to the Town pursuant to the SAC and the Superfund Municipal Assistance Grants for the Salina Landfill, the State became and is subrogated to all right of recovery of the Town against the defendants in the amount of such payments.

49.      The release and threatened release of hazardous substances at and from the Salina

Landfill contaminated the environment of the State, including, but not limited to, soils,

groundwater and surface water within the meaning of CERCLA Sections 101(22) and 107(a), 42

U.S.C. §§ 9601(22) and 9607(a).

50.    The release and threatened release of hazardous substances into the environment

at and from the Salina Landfill caused the State to incur response costs not inconsistent with the

National Contingency Plan within the meaning of CERCLA Section 101(25), 42 U.S.C.

§ 9601(25), and will continue to cause the State the incur response costs not inconsistent with the

National Contingency Plan.  To date, the State has incurred $25.8 million in response costs.

Defendants are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C.

§ 9601(21).

51.    Defendants are within the class of persons responsible for the release and

threatened release of hazardous substance from the Salina Landfill into the environment as a

transporter, owner or "arrangers" pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a).

52.    During the time in which hazardous substances were disposed of in the Salina

Landfill, defendant Plaza East, LLC and/or its corporate predecessors, successors and affiliates,

owned the majority of the acreage comprising the Salina Landfill, which defendant had leased to

the Town of Salina, and thus is liable for response costs pursuant to Section 107(a)(2) of

CERCLA, 42 U.S.C. § 9607(a)(2).

53.    During the operations of the Salina Landfill, A & T Haulers, defendant

Transportation Consultants, Inc.'s predecessor in interest, transported to and disposed of

hazardous substances at the Salina Landfill for General Electric, Crouse-Hinds, and General

Motors, and thus is liable for response costs pursuant to Section 107(a)(4) of CERCLA, 42

U.S.C. § 9607(a)(4).

54.    During the operation of the Salina Landfill, defendant General Electric arranged for the disposal of and/or disposed hazardous substances at the Salina Landfill from its manufacturing plant located at Electronics Park, Syracuse, New York, and thus is liable for response costs pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

55.    During the operation of the Salina Landfill, defendants Cooper and Eaton, through their predecessor Crouse-Hinds, arranged for the disposal of and/or disposed hazardous substances at the Salina Landfill from its manufacturing plant located at Wolf & Seventh North Streets, Syracuse, New York, and thus are liable for response costs pursuant to Section 107(a)(3) of CERCLA, 42 U.S.C. § 9607(a)(3).

56.    Pursuant to CERCLA, 42 U.S.C. § 9607(a), defendants are strictly, jointly and severally liable to the State for past costs incurred by the State in response to the release and threatened release of hazardous substances at and from the Salina Landfill.

57.    Pursuant to CERCLA, 42 U.S.C. §§ 9607 and 9613, defendants are strictly, jointly and severally liable for future response costs incurred by the State as a result of the release and threatened release of hazardous substances at and from the Salina Landfill.

58.    The release of hazardous substances at and from the Salina Landfill has caused injury to, destruction of and/or loss of the natural resources of the State within the meaning of Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

59.    Pursuant to CERCLA, 42 U.S.C. §§ 9607 and 9613, defendants are strictly, jointly and severally liable for the State's natural resource damages.

### Second Claim for Relief—Public Nuisance

60.     The State hereby incorporates by reference the allegations contained in Paragraphs 1 through 59 as if fully set forth herein.

61.     The release of hazardous substances from the Salina landfill and their presence in the environment, including groundwater, soil, soil vapor, and indoor air at and in the vicinity of the Salina landfill constitute a continuing public nuisance.

62.     Defendants participated in the creation of this continuing public nuisance at and in the vicinity of the Salina landfill.

63.     The State incurred costs to abate the public nuisance at and in the vicinity of the Salina landfill.

64.     The public nuisance at and in the vicinity of the Salina landfill has injured the State's natural resources.

65.     Defendants are liable to the State under the common law of public nuisance and the New York Real Property and Proceedings Law § 841, for all costs, damages, and expenses arising from this public nuisance.

### Prayer for Relief

WHEREFORE, the State prays for a judgment:

(a)     Declaring defendants to be strictly, and jointly and severally, liable to the State under CERCLA for, and awarding to the State, all costs and expenses, including interest, attorneys' fees and other costs of enforcement, incurred by the State in responding to the release or threat of release of hazardous substances at or from the Salina Landfill, and damages to the State's natural resources;

13

(b)     Declaring defendants to be strictly, and jointly and severally, liable to the State under CERCLA for all future response costs and expenses, including interest, attorneys' fees and other costs of enforcement, to be incurred by the State in responding to the release or threat of release of hazardous substances at and from the Salina Landfill, and future damages to the State's natural resources.

(c)     Declaring defendants strictly, and jointly and severally, liable to the State for the public nuisance at and in the vicinity of the Salina Landfill; awarding the State reimbursement of its costs incurred with respect to the Salina Landfill, and declaring defendants to be strictly, and jointly and severally, liable to the State for all future costs and expenses, including interest, attorneys' fees and other costs of enforcement to be incurred by the State in responding to the release or threat of release of hazardous substances at or from the Salina Landfill, for abatement of the public nuisance, and future damages to the State's natural resources.

(d)     Ordering such other and further relief, in law or in equity, as the Court deems just and proper.


Dated:     Albany, New York
           January 14, 2016

                              ERIC T. SCHNEIDERMAN
                              Attorney General of the
                              State of New York

           By:

                              JAMES C. WOODS
                              Assistant Attorney General
                              Environmental Protection Bureau

14